Jobiak

11 BOXWOOD RD,
WESTFORD, MA
USA - 01886.

September 17, 2024

Doug Sapir
76 Hopkins Ave,
Jersey City, NJ 07306

Dear Doug:

On behalf of Jobiak, LLC, a Delaware limited liability company (the "Company"), I am pleased to offer you a position as a consultant of the Company. This letter agreement shall set forth the terms and condition of your relationship with the Company:

| | |
|---|---|
| Consultant Name | Doug Sapir |
| Start Date | October 1, 2024 |
| Role | Senior Client Acquisition Strategist consultant |
| Reports to | Manish Mehta |
| Duties | Close contracts with customers, business/ strategic partners, alliance partners or any other companies as mutually agreed. Solicit and close new business (Direct clients, Agencies, Programmatic partners). Other duties as mutually agreed with the CEO. |
| Time Required; Term | Time: As dictated by State of Massachusetts Labor Law.<br>Terms: Performance Review in 6 months and reassess |
| Compensation | FIXED CASH: You will be entitled to cash compensation in the amount of $75,000 per year which is $6,250/month, which shall be payable semi-monthly on the 15th and the last day of the month<br><br>Commission: 20% of all net revenue (after deducting any agency commissions, platform fees, third party fees, etc where ever applicable) which you bring on board.<br><br>Commission is payable for a maximum period of up to 12 months of the client contract agreement and the consultant is on active payroll of the company.<br><br>Consultant acknowledges that the aforementioned compensation represents the entirety of the compensation due to Consultant in exchange for Consultant's services. |
| Termination | Consultant may terminate the relationship at any time by giving one-month notice to the Company. |
| Confidentiality | You hereby warrant and agree that you have reviewed the attached Proprietary |

| | |
|---|---|
| / Inventions | Inventions Assignment Agreement, which is attached hereto and incorporated herein, and hereby agree to the terms and conditions contained therein. You understand that any breach of this provision, or of any other confidentiality and/or non-disclosure agreement between the parties, is a material breach of this letter agreement. |
| Name/Likeness | As a consultant, your name and bio may appear on our website and materials. |
| Governing Law | This letter agreement and all matters and issues collateral thereto shall be governed by and construed in accordance with the domestic laws of the Commonwealth of Massachusetts, without giving effect to conflict of laws principles. The parties hereto agree that venue and jurisdiction with respect to any matter arising under this letter agreement shall be exclusively in the state or federal courts, as applicable, located in Boston, Massachusetts. Each of the parties hereby waives the right to a jury trial. |

On behalf of all of the Company's management, we are excited about you serving as a Consultant to the Company and look forward to your input and guidance.

Sincerely,

Jobiak, LLC, a Delaware limited liability company

By: ________________________________
Ramana Pagadala

I agree to and accept the Consultant position and agree to be bound by this letter agreement and any terms and conditions outlined by the Manager of the Company.

Date: 9/20/2024 ________________________________
Doug Sapir

Jobiak

**JOBIAK, LLC**

**PROPRIETARY INFORMATION AND**
**INVENTION ASSIGNMENT AGREEMENT**

This Agreement is entered into as of September 17, 2024 (the "Effective Date") by and between Jobiak, LLC, a Delaware limited liability company (the "Company"), and **Doug Sapir** ("Consultant").

As a condition of Consultant's relationship with the Company, and in consideration of Consultant's relationship with the Company and receipt of the compensation now and hereafter granted to Consultant by the Company, Consultant agrees to the following:

1. **At-Will Relationship; Applicability to Prior Periods.**

(a) The parties agree that Consultant's relationship with the Company shall be an "at-will" relationship and may be terminated at any time with or without cause or notice at the option of either the Company or Consultant. No provision of this Agreement shall be construed as conferring upon Consultant a right to continue as an Consultant of the Company.

(b) Company and Consultant acknowledge that Consultant may have performed work, activities, services or made efforts on behalf of or for the benefit of Company, or related to the current or prospective business of Company in anticipation of Consultant's involvement with Company for a period of time prior to the Effective Date (the "Prior Consulting Period"). Accordingly, Consultant agrees that if and to the extent that, during the Prior Consulting Period: (i) Consultant received access to any information from or on behalf of Company that would have been "Confidential Information" (as defined below) if Consultant received access to such information during the term of this Agreement; or (ii) Consultant (a) conceived, created, authored, invented, developed or reduced to practice any item (including any intellectual property rights with respect thereto) on behalf of or for the benefit of Company, or related to the current or prospective business of Company in anticipation of Consultant's involvement with Company, that would have been an "Invention" (as defined below) if conceived, created, authored, invented, developed or reduced to practice during the term of this Agreement; or (b) incorporated into any such item any pre-existing invention, improvement, development, concept, discovery or other proprietary information that would have been a "Prior Invention" (as defined below) if incorporated into such item during the term of this Agreement; then any such information shall be deemed "Confidential Information" hereunder and any such item shall be deemed an "Invention" or "Prior Invention" hereunder, and this Agreement shall apply to such activities, information or item as if disclosed, conceived, created, authored, invented, developed or reduced to practice during the term of this Agreement.

2. **Right to Advice of Counsel.** Consultant acknowledges that he has had the right to consult with counsel and is fully aware of Consultant's rights and obligations under this Agreement.

3. **Successors.**

(a) **Company's Successors.** Any successor to the Company (whether direct or indirect and whether by purchase, lease, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets shall assume the obligations under this Agreement and agree expressly to perform the obligations under this Agreement in the same manner and to the same extent as the Company would be required to perform such obligations in the absence of a succession. For all purposes under this

Agreement, the term "Company," shall include any successor to the Company's business and/or assets which executes and delivers the assumption agreement described in this subsection (a) or which becomes bound by the terms of this Agreement by operation of law.

(b) **Consultant's Successors.** Without the written consent of the Company, Consultant shall not assign or transfer this Agreement or any right or obligation under this Agreement to any other person or entity. Notwithstanding the foregoing, the terms of this Agreement and all rights of Consultant hereunder shall inure to the benefit of, and be enforceable by, Consultant's personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees.

4. **Confidential Information**.

(a) **Company Information**. Consultant shall at all times during the term of Consultant's relationship with the Company and thereafter, hold in strictest confidence, and not use, except for the benefit of the Company, or disclose to any person, firm or corporation without written authorization of the Company's Managers, any Confidential Information of the Company. As used herein, "Confidential Information" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom Consultant has called or with whom he or she became acquainted during the term of Consultant's relationship), markets, software, developments, inventions, conceptions, patentable subject matter, processes, formulas, technology, specifications, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information of the Company; provided, however that "Confidential Information" shall not include information which is not unique to the Company or which is generally known in the industry or the public. "Confidential Information" also does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of Consultant or of others who were under confidentiality obligations as to the item or items involved.

(b) **Former Employer Information**. Consultant shall not, during Consultant's relationship with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and Consultant shall not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) **Third Party Information**. Consultant shall hold all confidential or proprietary information that the Company has received from any third party to which it is the Company's obligation to maintain the confidentiality of such information and to use it only for certain limited purposes in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out Consultant's work for the Company consistent with the Company's agreement with such third party.

5. **Inventions**. Consultant hereby represents, warrants and covenants as follows:

(a) **Inventions Retained and Licensed**. Attached hereto, as Exhibit A, is a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by Consultant prior to Consultant's relationship with the Company (collectively referred to as "Prior Inventions"), which belong to Consultant, which relate to the business of the Company, products or research and development, and which are not assigned to the Company hereunder; or, if Exhibit A is left blank, Consultant hereby represents that there are no such Prior Inventions. If in the course of Consultant's relationship with the Company, Consultant incorporates into a Company product, process or machine a Prior Invention owned by Consultant or in which Consultant has an interest, the Company is hereby granted and

shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

(b) **Assignment of Inventions**. Consultant shall, or will promptly make, full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and agrees to assign and hereby does assign to the Company, or its designee, all of Consultant's rights, title, and interest, including, without limitation, any right of priority, in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which Consultant may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time Consultant is retained by the Company (collectively referred to as "Inventions"), except as provided in Section 5(e) below. Consultant hereby acknowledges that all original works of authorship which are made by Consultant (solely or jointly with others) within the scope of and during the period of Consultant's relationship with the Company and which are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act. Consultant hereby understands and agrees that the decision whether or not to commercialize or market any invention developed by Consultant solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to Consultant as a result of the Company's efforts to commercialize or market any such Invention.

(c) **Maintenance of Records**. Consultant shall keep and maintain adequate and current written records of all Inventions made by him or her (solely or jointly with others) during the term of Consultant's relationship with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(d) **Registrations**. Consultant shall assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. Consultant agrees that it is Consultant's obligation to execute or cause to be executed, when it is in Consultant's power to do so, any such instrument or papers after the termination of this Agreement. If the Company is unable because of Consultant's mental or physical incapacity or for any other reason to secure Consultant's signature to apply for or to pursue any application for any United States or foreign patents, mask works or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then Consultant hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Consultant's agent and attorney in fact, to act for and in Consultant's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by Consultant.

6. **Non-Solicitation**. Consultant hereby agrees as follows:

(a) During the term of Consultant's relationship with the Company, Consultant shall not engage in any activity (whether compensated or not) that is competitive with the Company or hold any ownership interests or make any loan to any person or entity engaged in a business that is competitive to the Company.

(b) To the fullest extent permissible under the law, during the term of Consultant's relationship with the Company and for a period of eighteen (18) months following the termination of such relationship, Consultant shall not (i) solicit, directly or indirectly, employees, consultants or independent contractors of the Company for the purposes of hiring them or (ii) solicit business, for himself or for any other person or entity, directly or indirectly, from any client or customer of the Company; *provided however*, that this Section 6(a) shall not be construed to preclude Consultant from soliciting or hiring any employee, consultant or independent contractor who has been terminated by the Company for at least six (6) months prior to commencement of discussions between Consultant and such employee.

(c) To the fullest extent permissible under the law and in further consideration of Consultant's compensation, Consultant shall not, during the term of Consultant's relationship with the Company and for a period of eighteen (18) months following the termination of Consultant's relationship with the Company, solicit, directly or indirectly, any vendor of the Company for the purpose of using such vendor's services in a business capacity.

(d) In the event that the provisions of this Section 6 are deemed to exceed the time, geographic or scope limitations permitted by applicable law, then such provisions shall be reformed to the maximum time, geographic or scope limitations, as the case may be, permitted by applicable laws.

7. **Returning Company Documents**. At the time of termination of the relationship between Consultant and the Company, Consultant covenants that he or she shall deliver to the Company (and will not keep in Consultant's possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by Consultant pursuant to Consultant's relationship with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 5(c), except that Consultant may retain personal notes, notebooks, and similar items that do not contain any Confidential Information. In the event of the termination of Consultant's relationship with the Company, Consultant hereby covenants to sign and deliver the "Termination Certification" attached hereto as Exhibit B.

8. **Notification of Other Employers**. Consultant agrees to grant consent to notification by the Company to future or concurrent employers of Consultant about Consultant's rights and obligations under this Agreement.

9. **Representations and Covenants**. Consultant agrees to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. Consultant represents that his or her performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by Consultant in confidence or in trust prior to Consultant's relationship with the Company. Consultant has not entered into, and agrees not to enter into, any oral or written agreement in conflict herewith. Consultant agrees that Consultant bears the burden of proving that given information or materials are not Confidential Information or that the assignment of inventions does not apply under the circumstances.

10. **Equitable Relief**. Because Consultant's services are personal and unique and because Consultant may have access to and become acquainted with the Confidential Information of the Company, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

11. **Notice Clause.**

(a) **Manner.** Any notice hereby required or permitted to be given shall be sufficiently given if in writing and delivered in person, by facsimile transmission, electronic mail, overnight delivery service or U.S. mail, in which event it may be mailed by first-class, certified or registered, postage prepaid, to either party at the address of such party or such other address as shall have been designated by written notice by such party to the other party.

(b) **Effectiveness.** Any notice or other communication required or permitted to be given under this Agreement will be deemed given (i) on the day when delivered in person, (ii) on the first business day of or after the date of confirmation that the facsimile has been successfully transmitted to the facsimile number for the party notified if sent by facsimile, (iii) on the first business day of or after the date of receipt by the party notified if sent by electronic mail, or (iv) the third business day after the day on which such notice was mailed in accordance with this Section.

12. **Severability.** The invalidity or unenforceability of any provision of this Agreement, or any terms hereof, shall not affect the validity or enforceability of any other provision or term of this Agreement.

13. **Integration.** This Agreement represents the entire agreement and understanding between the parties as to the subject matter herein and supersedes all prior or contemporaneous agreements whether written or oral. No waiver, alteration, or modification of any of the provisions of this Agreement shall be binding unless in writing and signed by duly authorized representatives of the parties hereto.

14. **Governing Law.** This Agreement shall be governed by and construed in accordance with the internal substantive laws, but not the choice of law rules, of the Commonwealth of Massachusetts.

15. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which together shall constitute on and the same instrument.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, each of the parties has executed this Agreement, in the case of the Company by their duly authorized officers, as of the day and year first above written.

**JOBIAK, LLC**

By:________________________________________
Name: Ramana Pagadala
Title: Operations Manager

**CONSULTANT**

Sign: ________________________________________
Doug Sapir

# EXHIBIT A

## LIST OF PRIOR INVENTIONS AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
| --- | --- | --- |
| Interview Army LLC | 9/20/2024 | A recruitment advertising agency specializing in helping employers with high-volume hiring of delivery drivers, warehouse associates, call center reps, retail workers, and other high-volume roles. Developed a process involving direct phone conversations with candidates to ensure qualification and fit before application, streamlining hiring, and reducing recruitment costs for employers. As part of Interview Army's services, the Interview Army Newsletter provides jobseekers with tips, tools, advice, and hot job listings to help them get interviews, secure promotions, transition jobs, and negotiate raises, offering practical insights and resources to support career growth. |

______ No inventions or improvements

______ Additional Sheets Attached

Signature of Consultant: ______________________

Date: 9/20/2024

**EXHIBIT B**

**JOBIAK, LLC**

**TERMINATION CERTIFICATION**

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Jobiak, LLC, its subsidiaries, affiliates, successors or assigns.

I have complied with all the terms of the Proprietary Information and Invention Assignment Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

In compliance with the Proprietary Information and Invention Assignment Agreement, I will preserve as confidential all Confidential Information (as that term is defined in the Proprietary Information and Invention Assignment Agreement) of the Company.

Date: 9/20/2024

Print Name: Doug Sapir